Donna Marie LAMASTUS, Petitioner–
Respondent,

v.

Ernest Lee LAMASTUS, Respondent–
Appellant.

No. 64936.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 1994.

---

William P. Bertram, Eric C. Harris, P.C., Flat River, for petitioner-respondent.

Stanley D. Schnaare, the Schnaare Law Firm, P.C., Hillsboro, for respondent-appellant.

SIMON, Judge.

Ernest Lee Lamastus ("Husband") appeals from a default judgment dissolving his marriage to Donna Marie Lamastus ("Wife") and awarding Wife primary custody of the child born of their marriage, without rights of visitation or any other contact.

Husband contends on appeal that the trial court erred in entering its judgment because: (1) the court failed to appoint a guardian ad litem, pursuant to § 452.423, R.S.Mo.Supp. 1993 (all further references to this section shall be to R.S.Mo.Supp.1993); (2) the alias

summons and return were defective, making personal jurisdiction over Husband improper; (3) Husband did not receive timely notice of the dissolution hearing; and (4) the court should not have denied Husband's request for a continuance where he "acted in a responsible manner . . . and was diligent." We affirm the dissolution and division of property, but we reverse the judgment as to the paternity, custody and support of the child and remand for further proceedings.

On September 22, 1992, Wife filed a petition for dissolution of the marriage. In her petition, Wife alleged that the marriage was irretrievably broken, and that she was due to deliver a child of Husband in September, 1992. There was one other child in the household, A.L.S., who was not a child of the marriage. Wife also sought primary custody of and child support for her unborn child. The child, C.L.L., was born October 7, 1992.

Wife's counsel wrote a letter dated May 18, 1993, seeking out-of-state service on Husband at his last known address, in Mt. Pleasant, Texas. The summons was returned non-est. On July 23, 1993, Wife's counsel again filed a request for out-of-state service on Husband, who then was incarcerated at the Garrett County Jail in Oakland, Maryland. The return indicated that the summons was received on July 29, 1993, and that service was performed by Corporal Larry E. Gnegy of the Garrett County Sheriff's Department.

On August 30, 1993, the Washington County Circuit Clerk's Office received an undated letter from Husband. In it, Husband requested "a delay or continuance" in the dissolution proceeding, and he added, "I strongly believe [that C.L.L.] is not mine and until a gene test . . . can be performed and [sic] verify whether the child is mine or not I will not take responsibility for said child." Husband also addressed the division of property in his letter, but he did not address the trial court's jurisdiction in any way. The Circuit Clerk sent a notice to Wife's counsel on September 3, 1993, stating that the court "does not intend to respond or react to [Husband's] letter (pleading) until the case is heard on September 20th, 1993."

Wife's counsel sent a notice of the September 20 hearing to Husband at the Garrett County Jail on September 8, 1993. Counsel also sent a letter to the Circuit Clerk's Office confirming that the notice was sent, along with a signed proof of service affidavit.

The hearing convened as scheduled on September 20, 1993. The trial court treated Husband's letter as a motion for a continuance, denied the motion, and found Husband in default. The court did not respond to any other matters contained in the letter.

The only witness to testify at the hearing was Wife. She affirmed that the marriage was irretrievably broken and that C.L.L. was the only child born of the marriage. On direct examination, Wife requested that the court deny Husband all visitation rights to C.L.L., on the ground that he "sexually molested or raped" A.L.S., her daughter from a prior union.

The court entered an order on September 23, 1993, dissolving the marriage and dividing the property; granting primary custody of C.L.L. to Wife; denying Husband all visitation rights; and ordering Husband to (1) pay to Wife $60.98 per week for child support, beginning 90 days after Husband's release from jail, and (2) provide medical insurance for C.L.L. through Husband's employer. On October 20, 1993, Husband, through counsel, filed a motion to vacate and modify the dissolution decree and to set aside the default judgment, on grounds substantially the same as those contained in his points on appeal. The motion was denied.

■ Our review is governed by the oft-cited principles of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32[1].

Husband first asserts that the trial court erred in failing to appoint a guardian ad litem because (1) Wife alleged that Husband sexually molested her daughter, A.L.S., and (2) Husband placed the paternity of C.L.L. in issue in his letter. We will address each of these grounds in turn.

■ Section 452.423.1 states:

In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

Our legislature enacted § 452.423 in 1988 in response to the Southern District's entreaty in *C.J.(S.)R. v. G.D.S.*, 701 S.W.2d 165 (Mo.App.1985). *See King v. King*, 793 S.W.2d 200, 203[6] (Mo.App.1990). In *C.J.(S.)R.*, the Southern District held:

> [I]t is an abuse of discretion not to appoint a guardian ad litem . . . where, as here, the choice of the custodian of minor children is in issue, and the court has knowledge, from the pleadings or from any other source, that *the children in question* have been, or are being, abused while in the custody of one claiming the right to be their custodian.

701 S.W.2d at 169[5] (emphasis added). We note initially that *C.J.(S.)R.*, from which § 452.423 is derived, requires appointment of a guardian ad litem where there is abuse of the "children in question," that is, the children whose custody is a contested issue. The Western District, after the enactment of § 452.423, likewise concluded that "the statute compels the appointment of a guardian ad litem in all child custody proceedings where a party alleges abuse or neglect of a minor child whose custody, visitation, or support is a contested issue." *Johnson v. Johnson*, 812 S.W.2d 176, 177[1] (Mo.App.1991).

There is no issue as to the custody, visitation or support of A.L.S.; rather, it is C.L.L., the only child of Husband and Wife, whose paternity is at issue. Therefore, Wife's testimony as to abuse of A.L.S. did not compel the appointment of a guardian ad litem.

■ Our inquiry does not end there, however. Husband contested the paternity of C.L.L. in his letter to the trial court. He now argues that because he raised paternity as an issue, the court was required to appoint a guardian ad litem for C.L.L.

■ Although no statute addresses this issue, there is caselaw precedent for Husband's position. "When pleadings or the evidence in the case show that the paternity of the child is an issue, a guardian ad litem must be appointed for the child." *In re Marriage of Myers*, 845 S.W.2d 621, 626[9] (Mo.App.S.D.1992). The appointment of a guardian ad litem under such circumstances is mandatory, and the proceeding cannot continue until the guardian is appointed. *Lechner v. Whitesell by Whitesell*, 811 S.W.2d 859, 861[4] (Mo.App.1991). A trial court's failure to appoint a guardian ad litem in such a situation is reversible error if it is properly raised or it justifies sua sponte relief. *S._____ v. S._____*, 595 S.W.2d 357, 361[3] (Mo.App.1980).

Wife's only response is that paternity was not actually at issue because Husband's letter either was not a pleading or, if it was an answer to Wife's petition, it was not filed in time.

Husband was served with process on July 29, 1993, at the Garrett County Jail in Maryland. He then had thirty days in which to file an answer. Rule 55.25(a). July 29 did not count in the computation of time, as "the day of the act [of service] . . . after which the designated [thirty-day] period of time begins to run. . . ." Rule 44.01(a). July 30, then, was the first day, so August 28 was the thirtieth day. However, August 28, 1993, was a Saturday. Rule 44.01(a) states: "The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday." Therefore, the period for Husband to answer was extended to Monday, August 30, 1993, the date on which his letter was filed. If his letter was an answer, it was timely, and Wife's contention to the contrary is incorrect.

■ The trial court, however, treated Husband's letter as a motion for continuance rather than an answer. *Myers, supra,* makes it clear that any evidence that places the paternity of a child in question mandates the appointment of a guardian ad litem. Whether Husband's letter is an answer or a motion is not determinative here because, in either case, it properly raised paternity as an

issue; thus, the court was required to appoint a guardian. Further, since paternity is disputed, the child should be joined as a party, *Lechner*, 811 S.W.2d at 861[5], particularly where, as here, Husband's contentions, if true, could bastardize the child. *L.M.K. v. D.E.K.*, 685 S.W.2d 614, 616[8] (Mo.App. 1985). Point granted.

In his second point, he contends that the circuit court lacked personal jurisdiction over him, thereby invalidating the default judgment, because the alias summons and return were defective. Specifically, Husband argues that the summons and return (1) did not contain an affidavit of service as required by Rule 54.20(b), and (2) did not inform Husband that he must file a verified answer to the petition.

■ Since personal jurisdiction may be conferred by waiver, *State ex rel. Tinnon v. Mueller*, 846 S.W.2d 752, 754[3] (Mo.App. E.D.1993), we will not address Husband's specific contentions. Entry of a general appearance waives a challenge to personal jurisdiction. *See C & H Distributors, Inc. v. Cloud Enterprises, Inc.*, 866 S.W.2d 927, 928 (Mo.App.E.D.1993). The law regarding appearances changed with the adoption of the Civil Code of 1943, which abrogated the old rule requiring a "special appearance" to challenge personal jurisdiction. *See id.* Many courts still followed the old rule, under which if a party took any action, other than an objection to subject-matter jurisdiction, which recognized the case as being in court, the action amounted to a general appearance and a waiver of personal jurisdiction. *See, e.g., Germanese v. Champlin*, 540 S.W.2d 109, 112[8] (Mo.App.1976).

In *State ex rel. White v. Marsh*, 646 S.W.2d 357 (Mo. banc 1983), our Supreme Court addressed this situation, holding that a defendant did not waive personal jurisdiction by filing a request for an extension of time under Rule 44.01(b). *Id.* at 361[2]. However, the *Marsh* Court expressly excepted "situations in which a defendant takes steps in a case which are clearly inconsistent with any claim of want of personal jurisdiction." *Id.* at 362. We recently reaffirmed this principle, noting that the filing of a responsive pleading "recogniz[es] that a cause is in court [and] amounts to a general appearance." *Walker v. Gruner*, 875 S.W.2d 587, 589[6] (Mo.App.E.D.1994). Likewise, whether Husband's letter was an answer or a motion for continuance, it demonstrated his knowledge that the dissolution proceeding was in court. Further, the letter did more than merely seek an extension of time, in that it also contested the paternity of C.L.L. and the division of property. Therefore, the situation here is distinguishable from that in *Marsh*, and Husband's letter "amounted to a general appearance" and a waiver of the improper return and lack of personal jurisdiction. Point denied.

■ Husband contends in his third point that the trial court erred in not setting aside the dissolution decree because he did not receive timely notice of the setting of the hearing. He explicitly disavows any insinuation that Wife's attorney failed to send the notice, but, he argues, "the mailing of said notice does not constitute receipt by [Husband]...." The suggestion that proper notice depends on receipt is contrary to common practice. The evidence here shows that proper notice was sent to Husband at his last known address. Point denied.

In his final point, Husband claims error in the denial of his request for a continuance where he "acted in a responsible manner by filing a written response to the pleadings and was diligent in seeking help from an attorney."

■ The trial court has broad discretion in deciding whether to grant a motion for continuance. *Nance v. Nance*, 880 S.W.2d 341, 344[1] (Mo.App.E.D.1994). The denial of such a motion rarely is reversible error. *In the Interest of S____ G.*, 779 S.W.2d 45, 51[2] (Mo.App.1989). The decision of a trial court to deny a motion for continuance will not be set aside absent a showing of arbitrary or capricious exercise of its discretion. *Pupillo v. Pupillo*, 863 S.W.2d 631, 633[3] (Mo.App.E.D.1993).

■ Rule 65.03 enumerates the proper procedure for seeking a continuance. It states in relevant part: "An application for a continuance shall be made by written motion

accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based...." Husband's letter, which the trial court construed as a motion for continuance, did not comply with Rule 65.03 because it lacked the required affidavit. *See Commerce Bank of Mexico, N.A. v. Davidson*, 667 S.W.2d 474, 476[3] (Mo.App.1984). In the absence of compliance with the requirements of the rule, there can be no abuse of discretion in denying a continuance. *In the Interest of C.L.L.*, 776 S.W.2d 476, 477[1] (Mo. App.1989).

 Husband seems to suggest that the trial court should have granted his motion because he was "responsible" and "diligent" despite not being represented by counsel. However, parties acting *pro se* are bound by the same rules and procedures as lawyers, and they are entitled to no indulgence they would not have received if represented by counsel. *Jim Medve Inv. Co. v. Bailous*, 740 S.W.2d 678, 680[4] (Mo.App.1987). The trial court did not abuse its discretion in denying Husband's motion for continuance because his letter did not comply with Rule 65.03. Point denied.

The judgment is affirmed with respect to the dissolution of the parties' marriage and division of property, but as to the paternity, custody and support of C.L.L., it is reversed and remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part and reversed and remanded in part with directions.

AHRENS, P.J., and KAROHL, J., concur.